**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aaron Ludwig, | No. CV-16-03826-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| State of Arizona and Donald Conrad, | |
| Defendants. | |

Plaintiff Aaron Ludwig filed this action against the State of Arizona and Donald Conrad, his former supervisor at the Arizona Attorney General's Office (the "AGO"), alleging that they maliciously instituted criminal proceedings against him and violated his constitutional rights. Doc. 1-1. The parties have filed cross-motions for summary judgment. Docs. 69, 80. The motions are fully briefed, and no party requests oral argument. For reasons stated below, the Court will grant summary judgment in favor of Defendants.

**I.  Background.**

The following facts are undisputed unless otherwise noted. Plaintiff was hired as an Assistant Attorney General in the AGO in 2010. Doc. 70 ¶ 1; Doc. 81at 1; Doc. 70-2 at 5.[1] From approximately April 2012 to December 2013, Plaintiff served as chief

---

[1] Page citations are to the page numbers attached to the top of pages by the Court's electronic filing system rather than the documents' original page numbers.

counsel of the financial remedies section. Doc. 70-2 at 7-8. On January 30, 2015, Plaintiff resigned in lieu of termination at the urging of his supervisor, Defendant Donald Conrad. *Id.* at 4-5.

### A. The Incident at Afficient.

On May 1, 2015, Plaintiff accompanied Stephanie Hill to Afficient Towing to retrieve her vehicle, which Afficient had towed from a church parking lot. Doc. 70 ¶ 2; Doc. 81 at 1. Plaintiff conducted research before going to Afficient. Doc. 70-2 at 17-18. He printed a city towing ordinance, documents from a criminal case that had been filed against Afficient, and "a couple of other documents," and brought them with him. *Id.* at 18. Plaintiff told the Afficient employee at the teller window, Veronica Uriarte, that he was the "immediate past chief of the Racketeering and Asset Forfeiture Section of the Attorney General's Office." *Id.* at 26.

While standing at the teller window, Plaintiff took a wallet out of his pocket, removed a clip from the wallet, and laid the clip on the counter. Doc. 70-2 at 27-28. The clip bore a commemorative badge he purchased while working at the AGO – a star-shaped gold badge with a Super Bowl trophy, the words "Arizona Attorney General," "Asst. Attorney General," and the last three digits of Plaintiff's state employee number. *Id.* at 22-23, 27; *see* Doc. 70-1 at 76. These badges were available only to law enforcement officers and prosecutors, but they were not official badges. Doc. 70 ¶ 5; Doc. 81 at 2-3. Plaintiff removed a business card, believing that it was a card with his private business name on it. Doc. 70-2 at 31-32. He instead inadvertently removed one of his Assistant Attorney General business cards. *Id.* He then put the wallet and clip back in his pocket. *Id.* at 27.

At that point, Afficient's owner, Bonnie Jones, arrived and took Plaintiff and Ms. Hill to a separate office. Doc. 70 ¶ 11; Doc. 81 at 3. Plaintiff again introduced himself as the immediate past chief of the racketeering and asset forfeiture section, and gave the business card and printed documents to Ms. Jones. Doc. 70 ¶ 12; Doc. 81 at 4. Plaintiff told Ms. Jones that he was recording their conversation, which was not true. *Id.* Plaintiff

also took a photograph of a document that Ms. Jones showed him. Doc. 70 ¶ 14; Doc. 81 at 4. Afficient ultimately released Ms. Hill's car at no charge. Doc. 70 ¶ 19; Doc. 81 at 5.

### B. Ms. Jones Contacts the AGO.

Shortly after Plaintiff and Ms. Hill left Afficient, Ms. Jones contacted the AGO. Doc. 70-1 at 88; Doc. 70-2 at 48-49. She left two voicemail messages explaining that "one of your agents, Aaron S. Ludwig," was at Afficient that day, "his badge was laid on the counter," he claimed "he was recording me," and he was "threatening, taking pictures of everything, doing everything he could to intimidate us and . . . basically using his color of authority to scare us into doing something that we do because it's the law." Doc. 70-1 at 8. She reported that "[Ms. Hill] did sign the papers, she did receive her vehicle, she did not pay, but that was not the issue. The issue is Mr. Aaron Ludwig and his using his color of authority to intimidate my people." *Id.*

On the same day, before the AGO conducted any investigation, Andrew Rubalcava, the AGO chief of special investigations, informed Mr. Conrad of Ms. Jones's complaint. Doc. 70-2 at 74-76. Mr. Conrad called Plaintiff – in the presence of Mr. Rubalcava – and left a voicemail informing Plaintiff of the report and asking him to stop using his official business cards and turn in any badge he still had. Doc. 70-2 at 35; Doc. 70-1 at 116-18. Plaintiff testified that the voicemail continued after Mr. Conrad believed he had hung up, and that Plaintiff heard Mr. Conrad say "these towing companies play their cards close to the vest," and "who knows if the son of a b---- will even call me back." Doc. 81-1 ¶ 44. Plaintiff believes that Mr. Conrad dislikes him and treated him unfairly while he worked at the AGO. Doc. 81-1 at 2-3.

### C. The AGO Investigation.

Ms. Jones's voicemails were initially screened by an AGO intern, who referred them to Buddy Loomis, an AGO special agent. Doc. 70-2 at 47-48. Ms. Loomis listened to the voicemails, called Ms. Jones to follow up, and requested that Ms. Jones e-mail copies of the documents Plaintiff left with Ms. Jones. *Id.* at 48-54. During the follow-up

call, Ms. Jones explained that Plaintiff had handed her documents related to her prior arrest by the Glendale police as well as a Glendale law, and had implied that the Glendale police "were after [her] again." Doc. 70-1 at 91-92. When asked about the badge, Ms. Jones explained that she "didn't look that close," but she believed that he "was definitely some kind of police." *Id.* at 91, 93.

Ms. Loomis forwarded the information to Georgia Davies, the duty agent at the AGO. Doc. 70-2 at 52. Ms. Davies reviewed the information, interviewed Ms. Jones and Ms. Uriarte, visited Afficient to watch the video surveillance tapes, and concluded that Plaintiff had committed a felony. Doc. 70-2 at 64-67. She relayed the information to Mr. Rubalcava, who summarized it in a report to Mr. Conrad. Doc. 70-1 at 118-19.

After reviewing the information compiled by Ms. Loomis, Ms. Davies, and Mr. Rubalcava, Mr. Conrad concluded that there was a "colorable claim" that Plaintiff had violated A.R.S. § 13-2006(A)(3). Doc. 70-1 at 108, 123. That statute prohibits persons from "[p]retending to be, or assuming a false identity of, an employee or a representative of some person or organization with the intent to induce another person to provide or allow access to property." Mr. Conrad forwarded the results of the investigation to the Maricopa County Attorney's Office (the "MCAO"). Doc. 70 ¶ 27; Doc. 81 at 8. In the forwarding letter, Mr. Conrad stated that the AGO "authorizes [the MCAO] to assume prosecutorial responsibility" for the "possible prosecution" of Plaintiff. Doc. 81-7 at 46. A "Release Questionnaire" completed by Ms. Davies and submitted to the MCAO provides the following statement of probable cause:

> On May 1, 2015, Aaron Ludwig presented himself as an employee of the [AGO] in order to recover a vehicle that had been towed. He identified himself verbally as well as presented a badge and business card stating the same to the employees of the tow company that towed the vehicle in an attempt to obtain the vehicle without paying.

Doc. 81-7 at 51-52.

### D. The MCAO Charges.

The MCAO charged Plaintiff with criminal impersonation under § 13-2006(A)(3). Doc. 70 ¶ 29; Doc. 81 at 9. Plaintiff asserts that the MCAO relied entirely on the information it received from the AGO, but submits no evidence to support this assertion. *See* Doc. 81 at 9. The charge eventually was dismissed without prejudice by the MCAO. Doc. 70 ¶ 31; Doc. 81 at 9.

### E. Plaintiff's Attempt to Obtain a Clearance Order.

After the charge was dismissed, Plaintiff filed a petition for a clearance order pursuant to A.R.S. § 13-4051, asking the Maricopa County Superior Court to clear the charge from his record and seal the associated pleadings (the "Clearance Action"). Doc. 70 ¶ 34; Doc. 81 at 10. Superior Court Commissioner Nothwehr denied the petition after holding a two-day evidentiary hearing at which Plaintiff testified and was represented by counsel. Doc. 70 ¶ 34; Doc. 81 at 10. Plaintiff appealed, and the Arizona Court of Appeals affirmed, finding that the "record supports the trial court's finding that probable cause supported Ludwig's charge," and "that Ludwig was not factually innocent." *See State v. Ludwig*, No. 1 CA-CR 16-0735, 2017 WL 3484502, at *3 (Ariz. Ct. App. Aug. 15, 2017).[2] Plaintiff has filed a motion for reconsideration with the court of appeals. Doc. 81 at 10; Doc. 81-7 at 54-66.

### F. This Suit.

On April 19, 2016, Plaintiff served a notice of claim on Lisa Fischer, an authorized recipient at the AGO. Doc. 70-2 at 101. The notice identified Mr. Conrad as a defendant, but, in accordance with AGO policy, Ms. Fischer accepted service only on behalf of the State. *See id.* at 101, 105, 107, 109-10. Mr. Conrad was not personally served with a notice of claim. *Id.* at 118.

Plaintiff filed this case in Maricopa County Superior Court on October 2, 2016, and Defendants removed it to this Court. *See* Docs. 1, 1-1. The complaint asserts six

---

[2] The Court cites this case pursuant to Arizona Supreme Court Rule 111(c)(1)(A), which allows citation of unpublished memorandum decisions "to establish claim preclusion, [or] issue preclusion[.]"

- 5 -

causes of action: (1) malicious prosecution, (2) abuse of process, (3) deprivation of civil rights under color of state law, (4) "respondeat superior" (against only the State), (5) "malicious abuse of discretion" (against only Mr. Conrad), and (6) "individual violation of civil rights" (against only Mr. Conrad). Doc. 1-1 ¶¶ 218-64. Defendants and Plaintiff move for summary judgment on all claims.

## II. Legal Standard.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III. Analysis.

### A. State-Law Malicious Prosecution.

To establish malicious prosecution under Arizona law, Plaintiff "must prove damage by a criminal prosecution, which terminated in his favor, with defendant as prosecutor or complaining witness acting without probable cause and with malice." *Bearup v. Bearup*, 596 P.2d 35, 36 (Ariz. Ct. App. 1979). The "existence of probable cause is a complete defense to claims of . . . malicious prosecution." *Hockett v. City of Tucson*, 678 P.2d 502, 505 (Ariz. Ct. App. 1983).

Defendants argue that the existence of probable cause was litigated and established in the Clearance Action, and that Plaintiff is collaterally estopped from re-

litigating that issue here. Doc. 69 at 8. Plaintiff responds that Commissioner Nothwehr's determination of the issue was "based on what are now known to be false premises," and therefore collateral estoppel does not apply. Doc. 80 at 4. Plaintiff also argues that a "trier of fact could conclude that [Mr. Conrad] intended to have Plaintiff charged out of spite" based on evidence that Mr. Conrad and other AGO employees conducted an unreasonable investigation and did not know whether there was probable cause when they sent the case to the MCAO. Doc. 80 at 4.

In determining the collateral estoppel consequences of a state court judgment, federal courts apply the collateral estoppel doctrine of the state where the judgment was rendered. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 80-81 (1984). The Court will therefore look to Arizona law. In Arizona, collateral estoppel applies when (1) "the issue sought to be precluded is the same as that involved in the prior proceeding," (2) "the issue was actually litigated in the prior proceeding," (3) "the issue was determined by a valid and final judgment on the merits," and (4) "the determination was essential to the final judgment." *Corbett v. ManorCare of Am., Inc.*, 146 P.3d 1027, 1033 (Ariz. Ct. App. 2006).

The judgment in this case resulted from a petition filed by Plaintiff under A.R.S. § 13-4051. Such a petition "initiates a special proceeding that is in the nature of a civil action." *State v. Mohajerin*, 244 P.3d 107, 110 (Ariz. Ct. App. 2010). Such proceedings are reviewable by the Arizona Court of Appeals because they result in "a final judgment" by the superior court. *Id.* To succeed on a clearance petition, a plaintiff must prove that the arrest or charge was "wrongful." *Id*. Wrongfulness is given a broad definition. *Id.* at 111-12.

Defendants submit portions of the Clearance Action hearing transcript, the Superior Court's minute entry denying Plaintiff's request for clearance, and the Arizona Court of Appeals' decision affirming the Superior Court's denial. *See* Doc. 70-1 at 2-73; Doc. 70-2 at 88-99. Those documents make clear that all elements of collateral estoppel are satisfied.

First, the issue Defendants seek to preclude in this case – the existence of probable cause to support the charge of criminal impersonation – was addressed in the Clearance Action. The Superior Court and the Court of Appeals each considered whether the criminal impersonation charge against Plaintiff was supported by probable cause. *See* Doc. 70-2 at 88-90; *Ludwig*, 2017 WL 3484502, at *3, ¶ 14.

Second, the issue of probable cause was actually litigated in the Clearance Action. Plaintiff instituted the action, was represented by counsel, participated in a two-day evidentiary hearing, questioned State witnesses, placed exhibits in evidence, and testified on his own behalf. *See* Doc. 70-1 at 2-73.[3]

Third, the issue of probable cause was determined by a valid and final judgment on the merits. The trial court specifically found that "there was probable cause to support the filed charges" and denied Plaintiff's request for clearance under § 13-4051. Doc. 70-2 at 89-90. Plaintiff appealed, and the finding of probable cause and denial were affirmed. *Ludwig*, 2017 WL 3484502, at *3, ¶¶ 14, 21.

Fourth, resolution of the probable cause question was essential to the final judgment in the Clearance Action. The trial court specifically found that Plaintiff had not established the wrongfulness of the charge against him due to a lack of probable cause, and the court of appeals affirmed this finding. Doc. 70-2 at 89-90; *Ludwig*, 2017 WL 3484502, at *3, ¶¶ 14, 18.[4]

Plaintiff is collaterally estopped from asserting that the criminal charge against him was not supported by probable cause. Because the existence of probable cause is an absolute defense to an Arizona malicious prosecution claim, Defendants are entitled to summary judgment on this claim.

---

[3] Plaintiff asserts that "clearance petitions are summary in nature," but cites no authority on this point. Doc. 86 at 3.

[4] Arizona case law suggests that a finding of wrongfulness under the clearance statute can be based on a lack of probable cause. *See Mohajerin*, 244 P.3d at 113 (holding that "relief is potentially available" when a charge is not supported by a "factual basis") (citing *State v. Franco*, 737 P.2d 400, 402 (Ariz. Ct. App. 1987)). As a result, the finding of probable cause was essential to the trial court's decision that the charge against Plaintiff was not wrongful.

- 8 -

## B. Abuse of Process.

To succeed on his Arizona abuse of process claim, Plaintiff must present evidence that Defendants committed "a willful act in the use of judicial process . . . for an ulterior purpose not proper in the regular conduct of the proceedings." *Fappani v. Bratton*, 407 P.3d 78, 81 (Ariz. Ct. App. 2017) (quoting *Nienstedt v. Wetzel*, 651 P.2d 876, 881 (Ariz. Ct. App. 1982)). Unlike the tort of malicious prosecution, which covers the initiation of criminal proceedings with malice and without probable cause, abuse of process addresses misuse of process after proceedings have been initiated. *See Joseph v. Markowitz*, 551 P.2d 571, 573-74 (Ariz. Ct. App. 1976). Thus, "abuse of process requires some act beyond the initiation of a lawsuit[.]" *Id.* at 575. Although Arizona "interprets 'process' as encompassing 'the entire range of procedures incident to the litigation process[,]'" a plaintiff "must prove that one or more specific judicially sanctioned processes have been abused." *Crackel v. Allstate Ins. Co.*, 92 P.3d 882, 887 (Ariz. Ct. App. 2004) (quoting *Nienstedt*, 651 P.2d at 880). In other words, the "authority of the court must have been invoked for a defendant to be liable for an abuse of process." *Id.* at 901.

Defendants argue that Plaintiff has presented no evidence that Defendants used a judicial process. Doc. 69 at 8-9. Plaintiff argues that the Release Questionnaire completed by Ms. Davies and sent to the MCAO by Mr. Conrad constituted a judicial process because it contained a statement of probable cause. Doc. 80 at 5. Because the questionnaire "induce[d] MCAO to charge," Plaintiff argues, it is part of the judicial process. *Id.* For three separate reasons, the Court cannot accept Plaintiffs' argument.

First, the questionnaire was completed before the charge was filed and was never submitted to a court. The questionnaire cannot constitute "process," which requires some invocation of the authority of a court. *Crackel*, 92 P.3d at 887.[5]

---

[5] Plaintiff submits an affidavit from Daniel Woods, a former AGO special agent, explaining that these "Form IV" Release Questionnaires are documents required by courts upon the institution of criminal charges, and that AGO employees were trained to use them solely for this purpose. *See* Doc. 86-2 at 2-6. Even so, in this instance the AGO submitted the form to the MCAO, not a court.

Second, the MCAO, not Defendants, initiated the judicial process by bringing the charge. This frees Defendants of potential liability for abuse of process. *See Fappani v. Bratton*, 407 P.3d 78, 82 (Ariz. Ct. App. 2017) (holding that defendant had not used a judicial process where defendant allegedly "caused the sheriff to issue [noise citations] and demanded that the county attorney prosecute the alleged noise ordinance violations," because "the deputies themselves, not [defendant], exercised their discretion and authority in issuing the citations").

Third, even if Defendants had brought the charge against Plaintiff, merely bringing a charge does not constitute abuse of process. *See Joseph*, 551 P.2d at 575 ("[A]buse of process requires some act beyond the initiation of a lawsuit[.]").

Defendants are entitled to summary judgment on the abuse of process claim.

### C. Deprivation of Federal Civil Rights.

Counts Three and Six of the complaint allege that the AGO and Mr. Conrad deprived Plaintiff of his Fifth and Fourteenth Amendment rights under color of state law. *See* Doc. 1-1 at 31-33. Specifically, Plaintiff alleges he has a right to be free from "improper use of criminal proceedings and charges without probable cause" and "the malicious use of criminal proceedings and charges." *Id.* at 31. Defendants argue that they are entitled to summary judgment because (1) the Due Process Clause does not protect against criminal charges without probable cause; (2) even if it did, the charge here was supported by probable cause; and (3) Plaintiff has presented no evidence of an unconstitutional AGO policy or custom to support liability under 42 U.S.C. § 1983 against the AGO. Doc. 69 at 10.

In response, Plaintiff clarifies that his claim is for a "denial of *procedural* due process under the 4th amendment, applicable to the States under the 14th amendment." Doc. 80 at 6 (emphasis in original). Plaintiff further explains that his claim is based on Defendants' completion of the Release Questionnaire. *Id.*

To prevail on a claim under 42 U.S.C. § 1983, Plaintiff must prove that (1) acts by Defendants (2) under color of state law (3) deprived him of federal rights, privileges,

or immunities and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005). The Ninth Circuit has recognized a § 1983 claim for "malicious prosecution with the intent to deprive a person of equal protection of the law or otherwise to subject a person to a denial of constitutional rights[.]" *Poppell v. City of San Diego*, 149 F.3d 951, 961 (9th Cir. 1998) (citing *Usher v. City of L.A.*, 828 F.2d 556, 562 (9th Cir. 1987)); *see also Albright v. Oliver*, 510 U.S. 266 (1994). "In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff 'must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right.'" *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (quoting *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995)). "A criminal defendant may maintain a malicious prosecution claim not only against prosecutors but also against others – including police officers and investigators – who wrongfully caused his prosecution." *Smith v. Almada*, 640 F.3d 931, 938 (9th Cir. 2011) (citing *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002)).

As explained above, Plaintiff is collaterally estopped from asserting that the charge against him lacked probable cause. The existence of probable cause defeats his § 1983 malicious prosecution claim.

Additionally, to the extent Plaintiff argues that he was denied procedural due process by completion of the Release Questionnaire, he fails to explain how the questionnaire, which was simply transmitted to the MCAO, constituted "process" under the Due Process Clause. And if it was some kind of constitutionally protected "process," Plaintiff fails to show how he was denied such process. If the argument is that the questionnaire lacked probable cause, Plaintiff is collaterally estopped from supporting that argument. Finally, to the extent Plaintiff alleges a violation of his Fourth Amendment right against unreasonable seizures, he fails to identify the seizure or explain

what made it unreasonable. Defendants are entitled to summary judgment on the § 1983 claim.[6]

### D. Respondeat Superior.

Plaintiff's complaint alleges "respondeat superior" against the AGO in Count Four, and states that "[t]o the extent Conrad was acting within the scope of his employment[,]" the AGO "was responsible to oversee and supervise him so that he would not harm and injure an innocent citizen by bringing abusive and malicious criminal charges against [him]." Doc. 1-1 at 32. Defendants argue that because the malicious prosecution and abuse of process claims against Mr. Conrad fail, there can be no vicarious liability against the AGO. Doc. 69. The Court agrees. *See Law v. Verde Valley Med. Ctr.*, 170 P.3d 701, 705 (Ariz. Ct. App. 2007) ("When a judgment on the merits . . . is entered in favor of the [agent], there is no fault to impute and the party potentially vicariously liable . . . is not 'responsible for the fault' of the [agent].").

Plaintiff argues in his response that "Conrad failed to supervise Rubalcava and indirectly, Davies." Doc. 80 at 7. Plaintiff failed to allege this claim in his complaint, and, even if he had, such a claim would still require Plaintiff to show that an AGO employee committed an underlying tort. *See Kuehn v. Stanley*, 91 P.3d 346, 352 (Ariz. Ct. App. 2004) ("For an employer to be held liable for the negligent hiring, retention, or supervision of an employee, a court must first find that the employee committed a tort."). Defendants are entitled to summary judgment on Count Four.

### E. Malicious Abuse of Discretion.

Count Five alleges "malicious abuse of discretion" against Mr. Conrad, and states that "[t]o the extent Conrad was acting outside the scope of his employment and authority, Conrad maliciously abused his discretion and intentionally exceeded his

---

[6] The constitutional claims against the State of Arizona and the AGO also fail because states are not considered "persons" under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Bank of Lake Tahoe v. Bank of Am.*, 318 F.3d 914, 918 (9th Cir. 2003) (relying on *Will* and dismissing a § 1983 claim for monetary relief against a state agency and its official). Plaintiff concedes that the AGO "is an agency of the State of Arizona." Doc. 1-1 at 3.

1 authority." Doc. 1-1 at 33. Defendants argue that this is not a cognizable legal theory and that Plaintiff has presented no evidence that Mr. Conrad acted outside the scope of his employment, abused his discretion, or exceeded his authority. Doc. 69 at 11. Plaintiff's response seems to argue that this count was not intended to be a separate claim, but rather an allegation to support an award of punitive damages. *See* Doc. 80 at 8. Punitive damages would be available only if Plaintiff were to prevail on an underlying cause of action. Because the Court will grant summary judgment on each of Plaintiff's underlying claims, Defendants are entitled to summary judgment on Count Four as well.

### F. Notice of Claim.

Mr. Conrad also argues that he is entitled to summary judgment on the state-law tort claims because Plaintiff failed to personally serve him with a notice of claim as required by A.R.S. § 12-821.01(A). Doc. 69 at 11-12. The Court addressed this issue in its order of March 6, 2017, denying Defendants' motion for judgment on the pleadings. Doc. 30. The Court explained in that order that Plaintiff could overcome his undisputed failure to personally serve Mr. Conrad with evidence that Mr. Conrad's authorized agent was served, or that Mr. Conrad waived his right to be served or should be equitably estopped from asserting the defense. Doc. 30 at 4 (citing *Pritchard v. State*, 788 P.2d 1178, 1181 (Ariz. 1990)).

Plaintiff has failed to produce any evidence to overcome his failure to serve Mr. Conrad. Plaintiff's only argument is that Defendants have denied him "crucial discovery" on this issue by objecting to Plaintiff's request to depose Terry Harrison, a former AGO employee. Doc. 80 at 7-8. Plaintiff failed to raise this issue with the Court during discovery, which closed on August 4, 2017, and it is too late now. *See* Doc. 23 ¶ 6(c). Without any proof that the AGO was Mr. Conrad's authorized agent or that Mr. Conrad waived his right to be personally served or should be equitably estopped from asserting this defense, Mr. Conrad is entitled to judgment on the state-law claims for this additional reason.

## IV. Attorneys' Fees.

Defendants request reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and A.R.S. § 12-349. Doc. 69 at 13-14; Doc. 83 at 8-9. Section 1988(b) allows the Court, in its discretion, to grant attorneys' fees to the prevailing party in a § 1983 action. 42 U.S.C. § 1988(b). A "prevailing defendant in a civil rights action is not entitled to attorney fees under 42 U.S.C. § 1988 merely because he prevails on the merits of the suit." *Allen v. City of L.A.*, 66 F.3d 1052, 1058 n.2 (9th Cir. 1995). Rather, the defendant must show that the action was "unreasonable, frivolous, meritless, or vexatious." *Id.* Similarly, A.R.S. § 12-349(A)(1) requires courts to assess reasonable attorneys' fees and costs against a party who brings a claim "without substantial justification," meaning that the claims were "groundless" and "not made in good faith." §§ 12-349(A)(1), (F).

Defendants argue that the § 1983 claim was frivolous because it is well established that there is no substantive Due Process right to be free from criminal prosecution without probable cause, and Plaintiff had no facts to support a *Monell* claim. Doc. 69 at 13. And they argue that the state-law claims were frivolous because, "ten days before Plaintiff filed this lawsuit," the Maricopa County Superior Court "specifically found probable cause" and that Plaintiff was not factually innocent. *Id.* at 14. Defendants assert that Plaintiff filed this suit "to retaliate against Mr. Conrad for firing him from the [AGO]." *Id.*

Plaintiff responds that Defendants are not entitled to fees because his claims were "fairly debatable." Doc. 80 at 8-9 (citing *Johnson v. Mohave Cty.*, 78 P.3d 1051, 1056 (Ariz. Ct. App. 2003) (holding that a party may not be required to pay fees under A.R.S. § 12-349(A)(1) where the party's claim was "fairly debatable")). In *Johnson*, although the plaintiff's theory was ultimately held to be incorrect, resolution of his claim "raised nonfrivolous issues" and "required considerable examination of the relationship between several statutes." 78 P.3d at 1055-56.

Given the manifest weakness of Plaintiff's claims, this is a close question. On balance, however, and in the exercise of its discretion, the Court does not find Plaintiff's claims so frivolous as to justify an award of fees. True, Plaintiff brought this case ten days after the Superior Court issued its probable cause ruling, but Plaintiff disagreed with that ruling and filed an appeal. The appellate court did not affirm until well into this litigation. Plaintiff's factual arguments on probable cause, although not persuasive, cannot be characterized as frivolous, and those arguments underlay his malicious prosecution claims under state law and § 1983. The Court will not award fees under 42 U.S.C. § 1988 or A.R.S. § 12-349.

**IT IS ORDERED:**

1. Defendants' motion for summary judgment (Doc. 69) is **granted**.
2. Plaintiff's cross-motion for summary judgment (Doc. 80) is **denied**.
3. Defendants' motion for attorneys' fees (Doc. 69) is **denied**.
4. The Clerk is directed to enter judgment in favor of Defendants and terminate this action.

Dated this 22nd day of February, 2018.

_____
David G. Campbell
United States District Judge